UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NOLAN HUDSON, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-963** |
| **SHERIFF MARLIN GUSMAN, ET AL.** | **SECTION "N" (5)** |

### PARTIAL REPORT AND RECOMMENDATION

Plaintiff, Nolan Hudson, Jr., an inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana, filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 seeking monetary compensation.[1]  Hudson's complaint stems from an incident that occurred while he was incarcerated in Orleans Parish Prison.

Hudson filed this civil action against Sheriff Marlin Gusman, Sgt. Ruiz, Captain Holt, Lt. Johnson and Sgt. Washington.  In his complaint, he claimed that his constitutional rights were violated by the use of excessive force against him, and that defendants exhibited deliberate indifference to his serious medical needs arising from the use of force. Specifically, he alleged that on January 29, 2011, at roll call, some prisoners laughed and the female deputy in charge thought Hudson had cursed her out.  She called Sgt. Ruiz, who removed Hudson, "cursed him all the way to a holding tank," and threatened Hudson with bodily harm. Sgt. Ruiz

---

[1] The Court notes that defendants have asserted in their Answer the defense of failure to exhaust, but have filed no motion to date in that regard.

tried to close a steel door on Hudson's foot and "pepper gassed" him for no reason at all while he was locked in the cell. He received no medical attention for two days. "All the rank stated that they couldn't help [him]."[2]

At the preliminary conference held in this matter,[3] Hudson reiterated his allegations stated above and described how he needed medical treatment from the effects of the mace, but was denied assistance by Captain Holt, Lt. Johnson and Sgt. Washington. He stated he had to use the water in the toilet to wash the mace off because the basin in the holding area did not work. He claims even when he was brought to the medical department two days later, he was denied treatment because he had not filled out a sick call form. According to plaintiff, he obtained salve from another inmate to use on his face, and it took several days before he began to feel better. Hudson claims that he now has diagnosed "floaters" in his eyes and needs prescription glasses as a result of this incident.

He explained that he sued Sheriff Gusman in his official supervisory capacity because he is the employer of the other

---

[2] Rec. Doc. 5, Complaint.

[3] Although scheduled as a preliminary conference, the conference was actually more akin to a Spears hearing which is in the nature of an amended complaint or a more definite statement. See Jackson v. Vannoy, 49 F.3d 175, 176–77 n. 4 (5th Cir.), cert. denied, 516 U.S. 851, 116 S.Ct. 148 (1995).

individuals involved. He sued Sgt. Ruiz because he sprayed plaintiff with mace unnecessarily. He sued the remaining defendants, Captain Holt, Lt. Johnson and Sgt. Washington, for not bringing him to the medical department when he requested assistance after the incident.[4]

## Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. §1915A. Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that... the action or appeal –
> > (i) is frivolous or malicious;

---

[4] Rec. Doc., 19.

>       (ii) fails to state a claim on which relief may be
>            granted; or
>       (iii) seeks monetary damages against a defendant who
>             is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A claim is frivolous when it lacks an arguable basis in law or in fact. Neitzke v. Williams, 490 U.S. 319, 328 (1989) (superseded by statute on other grounds); Talib v. Gilley, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. Harper v. Showers, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. Denton v. Hernandez, 504 U.S. 25, 32-33 (1992); Neitzke, 490 U.S. at 327-328.

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted), cert. denied, 128 S.Ct. 1230, 1231 (2008). The United States Supreme Court explained:

>    A claim has facial plausibility when the plaintiff pleads

> factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citations and quotation marks omitted).

After broadly construing plaintiff's complaint,[5] the Court will allow plaintiff's excessive-force claim against Sgt. Ruiz to proceed for further development and dismiss the remaining claims against the other defendants as frivolous and for otherwise failing to state a claim on which relief may be granted.

## Analysis

**A.   Supervisory Officials**

Plaintiff indicated that he sued Sheriff Gusman solely because of his official supervisory role. Regardless of his intent, plaintiff has failed to state a claim against Sheriff Gusman in either his official or individual capacity.

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir.1999). Accordingly, an official-capacity claim against Sheriff

---

[5] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

Gusman would in reality be a claim against the local governmental entity itself.  <u>Alexander</u> <u>v. City of Gretna</u>, Civ. Action No. 06-5405, 2010 WL 3791714, at *3 (E.D.La. Sept. 17, 2010).  The United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

<u>Spiller v. City of Texas City, Police Department</u>, 130 F.3d 162, 167 (5th Cir.1997) (quotation marks, brackets, and citations omitted). Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." <u>Colle v. Brazos County, Texas</u>, 981 F.2d 237, 245 (5th Cir.1993); <u>see</u> also <u>Wetzel v. Penzato</u>, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D.La. Dec. 23, 2009). Rather, he must identify the policy or custom which allegedly caused the deprivation of his constitutional rights. <u>See</u>, <u>e.g.</u>, <u>Murray v. Town of Mansura</u>, 76 Fed. App'x 547, 549 (5th Cir.2003); <u>Treece v. Louisiana</u>, 74 Fed. App'x 315, 316 (5th Cir.2003); <u>Wetzel</u>, 2009 WL 5125465, at *3. In the instant case, plaintiff does not allege that his constitutional rights were violated as a result of a policy or custom, much less identify such

a policy or custom, and, therefore, no official-capacity claim has been properly stated.

To the extent plaintiff intended to state an individual-capacity claim against Sheriff Gusman, he has failed to state a proper claim for relief. "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir.2002) (citation omitted). Additionally, "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir.1983). In this case, plaintiff does not set forth any specific allegations in his complaint against Sheriff Gusman. Plaintiff has not alleged that Sheriff Gusman was personally involved in or even aware of the events or conditions of which he complains. Plaintiff has therefore failed to state a viable federal claim against Sheriff Gusman under § 1983.

**B. Deliberate indifference to serious medical needs**

Plaintiff claims that Captain Holt, Lt. Johnson and Sgt. Washington exhibited deliberate indifference to his serious medical needs. Plaintiff's complaint indicates he was a pretrial detainee during the relevant time period.

In analyzing a pretrial detainee's claim of inadequate medical

care, the following legal analysis applies:

> Before the Fifth Circuit's decision in <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest. <u>Bell v. Wolfish</u>, 441 U.S. 520, 539 (1979); <u>Cupit v. Jones</u>, 835 F.2d 82, 85 (5th Cir.1987); <u>Mayweather v. Foti</u>, 958 F.2d 91 (5th Cir.1992). The inquiry was "whether the denial of medical care ... was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." <u>Pfannstiel v. City of Marion</u>, 918 F.2d 1178, 1186 (5th Cir.1990), abrogated on other grounds as recognized in <u>Martin v. Thomas</u>, 973 F.2d 449, 455 (5th Cir.1992).
>
> In <u>Hare</u>, however, the Fifth Circuit held:
> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk. <u>Hare</u>, 74 F.3d at 650. The Fifth Circuit explained that for the <u>Bell</u> "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." <u>Id</u>. at 645. If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission, and the deliberate indifference standard enunciated in <u>Estelle</u>, 429 U.S. 97, will apply. <u>Shepherd v. Dallas County</u>, 591 F.3d 445, 452 (5th Cir.2009) (citing <u>Bell</u>, 441 U.S. at 539; <u>Scott v. Moore</u>, 114 F.3d 51, 53 (5th Cir.1997); <u>Hare</u>, 74 F.3d at 649); <u>Tamez v. Manthey</u>, 589 F.3d 764, 769–70 (5th Cir.2009) (citing <u>Scott</u>, 114 F.3d at 53; <u>Hare</u>, 74 F.3d at 649).
>
> In <u>Estelle</u>, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42

U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain ... or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105–06; accord Gregg v. Georgia, 428 U.S. 153, 182–83 (1976); Tamez, 589 F.3d at 770; Hare, 74 F.3d at 650. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). The Farmer definition applies to Eighth Amendment medical claims. Reeves, 27 F.3d at 176.

   As with the conditions claim discussed above, an inmate who alleges constitutionally inadequate medical care must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs." Cooper v. Johnson, 353 F. App'x 965, 967 (5th Cir.2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir.1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir.1993).

    Further, plaintiff must establish that defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur County, 245 F.3d 447, 458–59 (5th Cir.2001)). "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Brewster v. Dretke, 587 F.3d 764, 770 (5th

>   Cir.2009), cert. denied, 130 S.Ct. 3368 (2010) (quoting <u>Domino v. Texas Dep't of Crim. Justice</u>, 239 F.3d 752, 756 (5th Cir.2001)) (emphasis added).
>
>   Once again, "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," <u>Southard</u>, 114 F.3d at 551 (quoting <u>Board of County Comm'rs</u>, 520 U.S. at 410 (other quotations omitted)) (emphasis added), and "'[s]ubjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." <u>Norton</u>, 122 F.3d at 291.

<u>Payton v. Gusman</u>, 2013 WL 5530280, at *9 (E.D. La. Oct. 7, 2013).

In the instant case, nothing more than episodic acts or omissions as defined in <u>Hare</u> are at issue. See <u>Tamez</u>, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'"). Therefore, the "deliberate indifference" standard applies and Hudson must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.

First, Hudson's allegations do not support a finding of a serious medical need. In fact, he fails to provide any factual allegations in his complaint to describe the extent of his alleged injury that required medical attention. Other than possible skin irritation from the mace at the time of the incident, the only long-term loss alleged is that Hudson, who is about 55 years old, has floaters in his eyes and now needs glasses. While he alleges he suffers from these eye conditions, neither is documented in his prison medical records. In any event, plaintiff did not suffer "a

life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes. See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir.1994), overruled in part on other grounds by Hope v. Peltzer, 536 U.S. 730, 739 (2002) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987) (medical need is serious when it "results in an inmate's suffering 'a life-long handicap or permanent loss'"); Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir.1978), cert. denied 439 U.S. 897 (1978) (no serious medical need was demonstrated when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health). Hudson's injuries simply do not rise to the level of serious medical needs for constitutional purposes. See McGuire v. Union County Jail, No. 4:13-CV-P28-M, 2013 WL 4520282, at *6 (W.D. Ky. Aug. 26, 2013) (complaint that eyes hurt and nose ran after pepper spray incident does not state a serious medical need), citing Censke v. Unknown Ekdahl, No. 2:08-CV-283, 2009 U.S. Dist. LEXIS 41962, at *23, 2009 WL 1393320 (W.D. Mich. May 18, 2009) (plaintiff's complaints of "burning in his nose, lungs, eyes, and skin after being sprayed with chemical agent" do not constitute a serious medical need for purposes of the Eighth Amendment[,] warranting dismissal under §1915A).

Second, even assuming, without concluding, that plaintiff's condition presented a serious medical need for constitutional purposes, the facts alleged by Hudson and the medical records show that he received constitutionally adequate medical care while

incarcerated in Orleans Parish Prison.  Hudson admits he received medical attention within two days of the incident.  The medical records reflect that he was brought to a nurse on January 31, 2011.  He told the nurse, "I was pepper sprayed" and "I'm itching on my arms and under my chest"; the nurse observed small red bumps to the breast folds.  Notably, there is no indication in the nursing notes that plaintiff complained about his face or eyes.  In fact, the nurse's assessment states, "no physical injuries noted c/o being pepper sprayed."  The nursing notes further state, "Refer to MD sick call for rash to R&L breast fold."  Plaintiff's request for medical care was not ignored, and his condition was treated.  The 48-hour delay in receiving medical attention for irritation caused by the pepper spray does not support a conclusion that defendants were deliberately indifferent to plaintiff's serious medical needs in the constitutional sense. See e.g., Hayes v. Dallas County, No. 3-08-CV-2136-K, 2009 WL 250029, at *3 (N.D.Tex. Jan. 30, 2009) ("The mere fact that plaintiff was in pain during that time [of delayed treatment] does not rise to the level of a constitutional violation."); Estes v. Bowers, No. 3-00-CV-1203-BD, 2002 WL 628755, at *2, 3 (N.D.Tex. Apr. 17, 2002), aff'd, 73 Fed. Appx. 747, 2003 WL 22013460 (5th Cir.2003) (To the extent that plaintiff argued "that Motrin therapy was not the appropriate course of treatment for his [preexisting] back pain, he has failed to state a constitutional violation." Neither a nine-day delay in x-raying a fractured rib nor a failure to prescribe medications for the fracture, in addition to the Motrin that plaintiff was already

taking, were deliberate indifference.); <u>Johnson v. City of Centreville</u>, No. 5:04cv309-DCB-JCS, 2006 WL 1795735, at *3-4 (S.D. Miss. June 28, 2006) (Bramlette, J.) (<u>citing</u> <u>Raspberry v. Johnson</u>, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir.2001). Even if plaintiff disagreed with the medical assessment and care he received, and thus felt he received "no treatment," this would not serve as a basis for finding deliberate indifference in order to state a cognizable claim under Section § 1983. <u>See</u> <u>Corte v. Schaffer</u>, 24 F.3d. 237, 1994 WL 242793, at *1 (5th Cir.1994) (contrary to plaintiff's allegation that he had received "no treatment" because he believed he needed a referral to a specialist, he failed to demonstrate deliberate indifference when he was seen by prison medical personnel with results being within a normal range); <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 193 (5th Cir.1993) (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim).

**C.   Excessive force**

The Due Process Clause of the Fourteenth Amendment protects a pretrial detainee from the use of excessive force that amounts to punishment. <u>Petta v. Rivera</u>, 143 F.3d 895, 911 (5th Cir.1998). The "pivotal inquiry" in examining an excessive force claim under §1983 is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[6] <u>Hudson v. McMillian</u>, 503 U.S. 1, 6-7, 112 S.Ct. 995, 117

---

[6] The standard for analyzing an excessive force claim under 42 U.S.C. § 1983 is the same whether brought under the Due Process

L.Ed.2d 156 (1992) (citing Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)); see Rankin v. Klevenhagen, 5 F.3d 103 (5th Cir.1993). The Supreme Court articulated the following factors to guide the inquiry, including: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response." Whitley v. Albers, 475 U.S. 312, 321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). In Hudson, the Supreme Court held that "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment when the inmate does not suffer serious injury," rejecting the Fifth Circuit's earlier requirement of "significant injury" to establish a claim of excessive force. Wilson v. Rheams, 494 Fed. Appx. 469, 470 (5th Cir. 2012), citing Hudson, 503 U.S. at 4, 112 S.Ct. 995. The Supreme Court has also rejected a requirement that a prisoner show more than a "*de minimis*" injury to establish a claim of excessive force because that approach is at odds with its direction in Hudson to "decide excessive force claims based on the nature of the force rather than the extent of the injury." Wilkins v. Gaddy, 559 U.S. 34, 130 S.Ct. 1175, 1177, 175 L.Ed.2d 995 (2010).

---

Clause by a pretrial detainee or under the Eighth Amendment by a convicted prisoner. See Valencia v. Wiggins, 981 F.2d 1440, 1447 (5th Cir.1993), cert. denied 509 U.S. 905 (1993).

In this case, plaintiff has alleged that after he was accused of a verbal altercation with a female deputy, Sgt. Ruiz escorted him to the holding tank.  Sgt. Ruiz cursed him, threatened him with bodily harm, tried to close a steel door on his foot, and once plaintiff was inside the locked cell, sprayed him with pepper spray for no reason at all.  He sought medical care for his alleged injuries after the incident.  While plaintiff's alleged injuries appear minimal at best, the extent of plaintiff's injury is but one factor to consider in determining whether excessive force was used. Thus, construing the complaint broadly, as the Court is required to do at this stage, the Court will allow plaintiff's claim of excessive force to go forward against Defendant Ruiz in his individual capacity.

**RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's claims against Sheriff Marlin Gusman, Captain Holt, Lt. Johnson and Sgt. Washington, be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[7]

New Orleans, Louisiana, this __20th__ day of __February__, 2014.

ALMA L. CHASEZ
**UNITED STATES MAGISTRATE JUDGE**

---

[7] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.